States v. Orlando, Mr. Harper, Orlando v. McManus. May it please the Court, Counsel, in order to prove that McManus knowingly and intentionally joined the conspiracy, the government is required to prove that he knew of the essential nature and of the scope of the charged conspiracy and that he intended to join it. Although it is true that a conspirator can join a conspiracy at the end, and it's also true that that conspirator need not know the identity of all of his co-conspirators, it must be proven that he knew of the conspiracy's scope. Here, the scope of the conspiracy charge... What difference would it make if he was just a party to the, what was this, the New Jersey visit? Correct, Your Honor, New Jersey. If he was just, that was a conspiracy. What difference would it make if he was just a member of that conspiracy and not of the larger conspiracy? It makes a significant difference, Your Honor, because, as Your Honor knows, the evidence related to the New Jersey conspiracy involved a five-minute conversation that ended in a handshake. But the jury also heard evidence of the Wisconsin collection attempt that involved testimony relating to putting the victim six feet under, to breaking his legs that resulted in the victim handing over his driver's license and turning over his vehicle. So there's a very different set of facts, and those facts tainted the jury's decision with respect to Mr. McManus's one visit to New Jersey that was a very different set of circumstances. So if Mr. McManus did not knowingly join the larger conspiracy to commit all three Hobbs Act violations in Nevada, Wisconsin, and New Jersey, but was only being tried for the conspiracy to commit the attempt in New Jersey, then the jury would not have heard the more egregious evidence relating to the Wisconsin collection. You're saying the jury would have acquitted him? Well, Your Honor, we don't know what the jury would have done, but McManus was deprived of a fair trial. Well, I don't understand. I don't think there's any doubt that the New Jersey visit was extortion. Well, Your Honor, whether or not the jury would have found that it was extortion, again... On what basis would they find it was not extortion? Well, Your Honor, they would find that it... No threat, no nothing? Yes, Your Honor, because in the New Jersey visit, there's no threat of the use of violence, unlike the testimony that's related to the Wisconsin visit. So because the jury hears the testimony related to the Wisconsin visit... Didn't they say they were coming back? They did, Your Honor, yes. What does that mean? Well, number one, they didn't return, but the fact that they said they were coming back, again, even if that one statement were to rise to the level of extortion, again, we don't know if the jury would have convicted on that because the jury was tainted by hearing the Wisconsin evidence. And the jury, although it was instructed that they were to... I'm now totally lost. Your client was actually convicted of extortion. That is the substantive offense. Well, it was attempted extortion. But we know your client was convicted of attempted extortion, so I don't see how there could be any doubt about what the jury would do. The jury did. The jury did, but the jury also heard evidence that related to the Wisconsin collection attempt, and there was confusion as to which attempt was being discussed when Mr. Brown is talking about the use of fear. This is the transcript at 976 that the government repeatedly cites in its brief where Mr. Brown talks about the use of fear, and it appears he's talking about Wisconsin. But in any event, actually, the district court judge directed the jury not to consider that evidence with respect to Mr. McManus. So the danger of confusion to the jury here was clear, and it was evidenced by the government's response brief where they did not even themselves follow the instruction that the district court gave. By the way, what is at issue here? Sentences were concurrent. So is this whole argument about the $100, the special assessment for the extra conviction? Well, no, Your Honor. Under the guidelines, conspiracy adds Zippo to the length of the recommended sentence. But as this court has counseled in United States v. CIA, 914F2nd881, where there is a reversal of one count, where there are multiple concurrent counts being served simultaneously, prudence and fairness dictates vacating all sentences and remanding for a resentence on the count that survives. I don't see why that would be true in a case where the guidelines expressly provide that no additional time is appropriate. I understand the $100 special assessment. The Supreme Court has said that with the special assessments, the concurrent sentence doctrine is dead. But it's awfully hard to see anything at issue here other than that. By the way, has your client paid the $100? Has he paid it and wants it back? Your Honor, I don't know the answer to that question. I see my time is up, but I would conclude just by saying that it was the fact that the jury did not just consider the New Jersey collection attempt, which is what should have properly been considered if Mr. McManus was only being tried on that count. And because he had no knowledge of the larger conspiracy, he should have been only tried on that count. Thank you, Your Honor. Okay, thank you. Good morning to the honorable body. Mr. Orlando posits two arguments, and I'll kind of argue them together. One is that he should have been assessed a minor role in the offense under 3B1.2, and one is that there is disparate sentencing among his co-defendants in related cases. The court in this case ruled that although it was a, quote, close call as to whether or not he was a minor participant, and although Mr. Orlando didn't really have a precise idea of what was going on during many of the extortions, and although he didn't know that one of the extortions was actually committed in New Jersey, and he didn't know if anyone was beaten or touched or what the language of the meeting was. But he was the organizer of this scheme, wasn't he? No, he was present at three meetings. I thought he did the recruiting. Well, what he did was make an introduction between the extorters. Yes, I call that recruiting. Recruiting the extortion of the thugs. Okay, even if he recruited the extortion, the case law says, and the court said, in fact, the court said that he didn't wash his hands of this after doing the recruitment. We'll call it the recruitment because obviously you're the boss. But he did the recruiting, and then the court said he didn't wash his hands. But what the court said was you continued to participate, and then he said, the court said, maybe participate is too strong a word, you attended planning meetings. But the recruitment surely is enough. I'm sorry? The recruitment surely is enough. To make him not a minor participant? Yes, of course. Well, the case law says. I mean, the recruiter, that's fundamental, right? You organize the extortionate scheme, and you have some tough guys, huge guys, big guys, you're not the big guy, and they go and do it. But he didn't organize anything, Your Honor. He didn't plan anything. He didn't participate in the planning. But he's the recruiter. He finds the thugs. He finds the thugs. Well, that's very important. If you don't have thugs, you don't have extortion. Absolutely, absolutely. And that's why I quoted Lascunas that said, even if your role is vital. Where did he find these guys? I'm sorry? Where did he find these guys? There was no evidence of how he found them. They were friends. Advertised on Craigslist, I would say. It was a high school friend, and somehow he put them together. But the reason I quoted Lascunas was that Lascunas said that even if your role is vital, even if you're the recruiter, even if your role is completed over a number of times, the question to determine whether you're a minor participant is whether you're less culpable than the co-defendants. And he's obviously less culpable than all of the co-defendants. I don't understand that. You don't understand? He recruits them. That makes him responsible for their behavior. He's lucky he didn't get an enhancement for being a supervisor or a manager. But he never did anything. Because somebody who recruits. He never did anything. He made an introduction. I understand. That's a working argument before a district judge. And sometimes a district judge will accept that. What you have to persuade us is that no sensible district judge could not only not think him a manager, but also every district judge from looking at this is bound to think that he's basically out of it. That's awfully hard to get across. I think it's obvious. We just issued an opinion, the name of which I've forgotten, in which we pointed out, quoting from the statute, that recruitment is one of the factors which you use in deciding whether someone is a manager or supervisor. It is one of the factors. But it's not the telling factor. There are seven other factors. Was he going to get money from the crime, which he wasn't? Was he participating? The government submits 14 pages of facts, doesn't say anything that Orlando did. He doesn't know what's going on during the commission of the offense. He doesn't know if they're using violence or not. What he did was make an introduction of an individual to an individual who was going to make a collection. But the point of that is, is he less culpable than his co-defendants? The court said during the sentencing of Orlando that Brown and Iozzo were far more culpable than Orlando. What about McManus, since we just heard from his lawyer? I don't want to rain on his parade, but McManus committed an extortion. He went out there and committed an extortion. He went out there and planned it. He found the person. He did all of these things that Orlando has no idea of what's going on. Orlando doesn't even know McManus. He didn't make the introduction to McManus. McManus didn't actually do threatening stuff, did he? He was just present. He was present for the extortion. But he didn't say things? No, as far as I know. Lastly, I'd like to very quickly point out the fact that there's a disparity in sentencing. I don't know how the government could get up before the court and indicate that co-defendants should receive the type of sentences they have. Carparelli received 42 months when he committed obstruction of justice in threatening witness. What does it say about our holding in Bosco Reno that anybody who is sentenced within or below the guideline range cannot make a complaint under 3553A6? The government relied on Bosco Reno, and I noticed that your reply brief didn't mention it. Well, I was lying out the facts of each of those. Yeah, but we have a rule of law here, which we generally try to follow. So the government says there's a particular rule of law in Bosco Reno, and your reply brief ignores it. Do you have a response to it now? I do have a response. Bosco Reno was pre- that the guidelines were mandatory, not- Bosco Reno was decided the year after Booker. Well- It's 2006. Carparelli's got the other guideline ranges in the case. Carparelli was 87 to 108 months. I'm asking about Bosco Reno. Is your distinction of Bosco Reno that it was pre-Booker? No, my distinction- Because that's not true. My distinction of Bosco Reno is that in this sentence, under 3553A6, the factors dictate that the sentence is unreasonable. It just doesn't have anything to do with Bosco Reno. Okay. Okay, thank you, Mr. Smirnoff. Ms. Kastanek? Good morning, and may it please the Court. Andriana Kastanek on behalf of the United States. McManus was a knowing participant in a single conspiracy to extort repayments of debts on behalf of American LIFO. The conspiracy was defined by core common participants, the same means across each of the attempted extortions, and over a short period of time. The defense seems to acknowledge that this was a single conspiracy. He argues that McManus was not a knowing member of that conspiracy because he was not aware of the events outside of the New Jersey trip. He was recruited by Carparelli to go to New York and New Jersey to talk not just to one debtor, but to two. So that trip involved not only visiting New Jersey, which was the concrete media extortion that your Honors were referring to, but also to find Joe Visciano, who was the owner of Union Transport, whom these individuals had previously attempted to visit in Las Vegas. That alone defeats the defendant's argument that he thought that this conspiracy was limited to only one debtor. Ultimately, this was a jury question. The same argument was made to the jury. The jury was instructed that they needed to find that the defendant had knowledge of the overall conspiracy, and the jury made that finding. To your Honor's questions about whether it would affect the ultimate result in this case if he had been a part of a more limited conspiracy, the answer is no. His guidelines range would remain exactly the same. Orlando also was a co-conspirator in that New Jersey-New York trip. He helped plan that trip, and so it would have been appropriate to have a joint trial, and all of the statements that were admissible under Santiago would still have been admissible against him as to that trip. There would have been no prejudice to the defendant. With respect to Orlando's argument on minimal role, as Your Honor's noted, Orlando was an architect of the scheme. He introduced de Zubin to Carparelli, whom he knew had mafia connections, and brought in, as Your Honor's noted, the thugs here. He was a recruiter. He was an architect, and his involvement did not end with that introduction. He continued his involvement. He organized the planning meetings. He provided money for the trips. He was a conduit of information during those trips, so he received phone calls from the individuals who were traveling. He provided information from de Zubin. He relayed information from de Zubin to these individuals. His involvement was sustained, and it was involved, and he was not a minor role in this conspiracy. His sentence that he received was 46 months. It was below the applicable guidelines range, and it was reasonable even in comparison to other defendants. The only two defendants that are even tangentially related to this investigation that were sentenced at the time of this sentencing were Iozo, who received a sentence of about 38 months, and an individual named DeSantis. As the district court held, Iozo was not a comparable defendant. He had a cooperation discount from the government. DeSantis is not an analogous defendant. He was charged in a completely separate extortion conspiracy. The only link to this case being that Brown was involved in both cases. All of the other defendants that Orlando cites in his reply brief were not something that was argued to the district court. What was Orlando's sentence? It was 46 months, Your Honor, and the guidelines range was 57 to 71 months. And that was the longest sentence, are you saying? It was not. McManus had a sentence of 60 months, Your Honor. Why did he have the longest sentence? Why did McManus have the longest sentence? So this court, the district court in this case, sentenced four defendants. Brown has not been sentenced, just for the record. Iozo had a cooperation discount, so he was sentenced to 38 months. Brown hasn't been sentenced yet? He has not, Your Honor. It's my understanding there are medical issues that have prevented him from being sentenced. As I said, Iozo had a cooperation discount. That dropped him down below the guidelines range. Of the remaining defendants that were sentenced by this particular district court, the only one who actually traveled and were involved in the actual extortions was McManus, which contributed to his 60-month sentence. McManus also has an atrocious criminal history. He had 13 criminal history points, put him in criminal history category 6, so his guidelines range at the low end was 87 months, so his 60 months was well below the bottom of that guidelines range. Did Orlando have a criminal history? He was in criminal history category 1. He had one criminal history point. If there are no further questions from the court, the government would ask that this court affirm the defendant's convictions and sentence. Okay. Thank you very much, Ms. Castaner. Mr. Harper or Mr. Salerno, do you have anything further? In response to the government's position that Mr. McManus knew that there were multiple collection attempts in New Jersey, there is simply no evidence of that. The government has implied that the jury properly inferred that the computer research that he did involved something that would have indicated his larger knowledge, but the government has not contended and, in fact, took the position in the district court that the computer research did not involve Mr. Viscayano, who was the Nevada target, and there's simply no evidence that Mr. McManus knew anything about a collection from Mr. Viscayano in New Jersey. And following up earlier on the conversation I had with you, Judge Easterbrook, I don't believe this is about sentencing. This is really about whether or not McManus received a fair trial when the activities in Wisconsin of which he was not involved in the planning, execution, and he had no knowledge of at the time he went to New Jersey, whether that evidence should have been considered by the jury and whether that deprived him of a fair trial. Thank you. Okay, thank you very much, Mr. Harper. Mr. Salerno, do you have anything? As a court of equity, Carparelli received a 42-month sentence for six extortions, being a leader or organizer and not a close call as to a minor participant. DeSantis received a year. Two other individuals who worked with Brown and Iozzo went out to an extortion. The individual extorted passed out, and then when he woke up, they beat him up to collect the money, received probation. Regardless of how we categorize his introduction of these individuals, you have Orlando, who is serving a 46-month sentence, the leader or organizer of this conspiracy and the mobster who coordinated all of the and received fruits of the crimes and coordinated the crime to receive a 42-month sentence. Other individuals receiving probation, a year and a day sentence. DeSantis, who was sentenced at the time, recruited some mobsters to do a collection. When they couldn't do it, he recruited other mobsters to collect. And I apologize for not addressing Boscorino in my response, but the government didn't cite Boscorino for the guideline sentence. On page 54, they said that the court has said that 3553A6 applies not to sentencing differences but to unwarranted disparities and that a reward for cooperation is a legitimate reason for difference, and they cited four separate cases and never talked about Boscorino again. That's why I didn't respond to Boscorino, but I believe as a court of equity, the sentence in this case is outrageous as applied to Orlando for his commission of having lunches and making an introduction and not knowing what's going on with the conspiracy and asked you to consider having him re-sentenced. Okay, thank you. And Mr. Salerno, Mr. Harvard, were you appointed? I was not. You were not? I was. Okay, well, we thank you for your efforts on behalf of your client.